IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FIDELITY AND DEPOSIT
COMPANY OF MARYLAND,

    Plaintiff,

v.

RUPERT EARL PHILLIPS; GREEN
ENERGY CONTRACTING, LLC;
GREEN ENERGY DEVELOPMENT
GROUP, LLC; PHILLIPS CAPITAL
PARTNERS, INC.; R & S PHILLIPS,
LLC; and R & S PHILLIPS FAMILY
PARTNERSHIP, LTD,

    Defendants.

Case No.:  3:22-cv-1269

---

## COMPLAINT

---

**COMES NOW**, Plaintiff, Fidelity and Deposit Company of Maryland ("F&D"), and files this Complaint against Defendants, Rupert Earl Phillips, Green Energy Contracting, LLC ("GEC"), Green Energy Development Group, LLC, Phillips Capital Partners, Inc., R & S Phillips, LLC, and R & S Phillips Family Partnership, Ltd (collectively, the "Indemnitors") and in support thereof, states as follows:

## PARTIES

1.    F&D is a corporation organized under the laws of the State of Illinois,

1

with its principal place of business located in Schaumburg, Illinois, and is authorized to do business in the State of Florida. F&D is a citizen of the State of Illinois.

2.    Rupert Earl Phillips is an individual and, upon information and belief, a resident of the State of Florida living within the boundaries of the Pensacola Division of the Court. Upon information and belief, Mr. Phillips is a citizen of the State of Florida.

3.    GEC is a limited liability corporation organized under the laws of the State of Florida, with its principal place of business located in the State of Florida within the boundaries of the Pensacola Division of the Court. Upon information and belief, all of GEC's members are citizens of the State of Florida and none are citizens of the State of Illinois. Upon information and belief, GEC is a citizen of the State of Florida.

4.    Green Energy Development Group, LLC is a limited liability corporation organized under the laws of the State of Florida, with its principal place of business located in the State of Florida within the boundaries of the Pensacola Division of the Court. Upon information and belief, all of Green Energy Development Group, LLC's members are citizens of the State of Florida, and none are citizens of the State of Illinois. Upon information and belief, Green Energy Development Group, LLC is a citizen of the State of Florida.

5.      Phillips Capital Partners, Inc., is a corporation organized under the laws of the State of Florida, with its principal place of business located within the boundaries of the Pensacola Division of the Court. Phillips Capital Partners, Inc. is a citizen of the State of Florida.

6.      R & S Phillips, LLC is a limited liability corporation organized under the laws of the State of Florida, with its principal place of business located in the State of Florida within the boundaries of the Pensacola Division of the Court. Upon information and belief, all of R & S Phillips, LLC's members are citizens of the State of Florida, and none are citizens of the State of Illinois. Upon information and belief, R & S Phillips, LLC is a citizen of the State of Florida.

7.      R & S Phillips Family Partnership, Ltd is a limited partnership organized under the law of the State of Florida with its principal place of business located within the boundaries of the Pensacola Division of the Court. R & S Phillips Family Partnership, Ltd. is a citizen of the State of Florida.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to this action occurred in the

Northern District of Florida and the Indemnitors are residents of the Northern District of Florida.

## FACTUAL ALLEGATIONS

10.   As part of its business, F&D issues performance and payment surety bonds for selected construction contractors in the State of Florida.

11.   GEC is a general contractor that required surety performance and payment bonds on various construction projects.

12.   One or more of the Indemnitors requested that F&D issue performance and payment bonds naming GEC as Principal.

13.   This action arises out of the Indemnitors' failures and refusals to indemnify and hold harmless F&D against all losses, expenses, costs, and damages related to F&D's having issued bonds naming GEC as the principal. The Indemnitors' failures and refusals constitute breach of their obligations to F&D under the General Indemnity Agreement ("GIA") executed by them in favor of F&D. A true and correct copy of the GIA is attached hereto as **Exhibit "A"** and fully incorporated herein by reference.

## *THE INDEMNITY AGREEMENT*

14.   On or about February 17, 2014, before F&D issued any bond naming GEC as principal, GEC and the other Indemnitors executed the GIA as an inducement for F&D to execute and issue bonds for various projects on behalf of

GEC.

15.     The execution of the GIA, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent to F&D issuing any bond naming GEC as a principal.

16.     In the GIA, GEC and the other Indemnitors specifically agreed, in part, to the following:

*Indemnitors shall exonerate, indemnify, and hold [F&D] harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this [GIA], (d) [F&D] enforcing this [GIA] or (e) any act of [F&D] to protect or procure any of [F&D]'s rights, protect or preserve any of [F&D]'s interests, or to avoid, or lessen [F&D]'s liability or alleged liability.* The liability of Indemnitors to [F&D] under this [GIA] includes all Claims made on [F&D], all payments made, Loss incurred, and all actions taken by [F&D] under the Good Faith belief that [F&D] is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed. *Indemnitors shall promptly, upon demand, make payment to [F&D] as soon as liability or Loss exists*, whether or not [F&D] has made any payment. An itemized statement of Loss, sworn to by any officer of [F&D], or the voucher or other evidence of any payment, shall be prima facie evidence of the fact, amount and extent of the liability of Indemnitors for such Loss. Indemnitors shall promptly, upon demand, procure the full and complete discharge of [F&D] from all Bonds and all liability in connection with such Bonds. If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with [F&D] an amount of money that [F&D] determines is sufficient to collateralize or pay any

outstanding bonded obligations.

17.    Under the GIA, Loss means,

[A]ll premiums due to [F&D] and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of [F&D]), consultant fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from [F&D]'s Settlement of any Claim. Pre-judgment and post-judgment interest shall accrue from the date of any payment made by [F&D] with respect to any of the foregoing at the maximum default rate permitted by law.

18.    The GIA further defines Claim or Claims as, "any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond, any Bonded Contract, or this [GIA]."

19.    GEC and the other Indemnitors further agreed,

[T]o promptly deposit with [F&D], on demand, an amount of money that [F&D] determines is sufficient to fund any liability or Loss. Such funds may be used by [F&D] to pay Loss or may be held by [F&D] as collateral against potential future Loss. Any remaining funds held by [F&D] after payment of all sums due to [F&D] under this Agreement shall be returned upon the complete release and/or discharge of F&D's liability under all Bonds.

20.    GEC and the other Indemnitors likewise agreed,

Indemnitors shall promptly provide [F&D] with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by [F&D]. Indemnitors shall furnish on demand, and [F&D] shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under

the control of any Indemnitor, at no cost to [F&D]. Indemnitors authorize any entity in which funds of any Indemnitor may be deposited to furnish to [F&D] a statement of the amount of such deposits as of the date requested. Indemnitors authorize any and all lenders, obligees, subcontractors, suppliers, accountants, other insurers, and other persons or entities to furnish to [F&D] any information requested by [F&D], including but not limited to the performance of obligations under any Bond or Bonded Contract and payments related to any such Bond or Bonded Contract.

21.    Finally, GEC and the other Indemnitors agreed that the obligations of each of the Indemnitors and GEC under the GIA are joint and several, and that the Indemnitors' failure to perform or comply with any provision of the GIA causes irreparable harm to F&D for which F&D has no adequate remedy at law and for which F&D is entitled to injunctive relief and/or specific performance.

22.    The GIA is unequivocal and specific in setting forth the Indemnitors' obligations to exonerate, indemnify, and hold harmless F&D from and against all Loss that F&D may sustain or incur in connection with, without limitation, all bonds executed on GEC's behalf or the GIA.

23.    The GIA is unequivocal and specific in setting forth the Indemnitors' obligations to promptly upon demand pay F&D for all Loss and expense incurred by F&D by reason, among others, of having executed or procured the execution of any bonds on GEC's behalf.

24.    The GIA is unequivocal and specific in setting forth the Indemnitors' assignment to F&D of, without limitation: "all right, title and interest of one or more

Indemnitor in the following, wherever located, and whenever acquired or arising: . . . all goods (including equipment, machinery, tools and materials), general intangibles, and inventory, to the extent not subject to a prior perfected security interest; [and] . . . all sums which are or may become payable in connection with . . . contracts in which any Indemnitor has an interest . . . ."

### THE BONDED PROJECT

25.    On or about May 14, 2014, in reliance on GEC's and the Indemnitors' commitments under the GIA, F&D issued payment and performance bonds naming GEC as principal and Hensel Phelps Construction Co. ("HPCC") as obligee on the construction project commonly referred to as Navy Federal Credit Union – Phase 1 ("Project"). A true and correct copy of the bonds that F&D issued pertaining to the Project ("Bonds") are attached hereto as **Exhibit "B"** and fully incorporated herein by reference.

26.    F&D issued the Bonds to guarantee GEC's obligations pursuant to its subcontract with HPCC ("Subcontract"). A true and correct copy of the Subcontract, less the exhibits, drawings, and specifications which are too numerous to attach but which are in GEC's possession already, is attached hereto as **Exhibit "C"** and fully incorporated herein by reference.

27.    GEC completed its Work under the Subcontract in or about 2016.

### *THE CLAIMS ASSERTED AND THE INDEMNITORS' DEFAULTS*

28.     Beginning in or about late 2016, HPCC began asserting claims against GEC for alleged defects and deficiencies in GEC's Work on the Project.

29.     On May 15, 2018, HPCC terminated the Subcontract and, thereafter, demanded that F&D perform GEC's obligations owed to HPCC.

30.     On February 7, 2020, HPCC commenced arbitration proceedings against GEC and F&D and asserted Claims against them arising fundamentally from alleged defects and deficiencies in GEC's Work on the Project, which Work the Bonds guaranteed. HPCC's alleged damages were in the principal amount of $1,933,034.42, plus attorneys' fees, costs, and interest.

31.     In response to the Claims asserted by HPCC, GEC and F&D defended against them and denied liability.

32.     During F&D's investigation of HPCC's Claims and in the arbitration proceedings F&D incurred Losses as defined in the GIA including, without limitation, attorneys' and consultants' fees and costs.

33.     On August 24, 2021, F&D demanded that the Indemnitors "immediately, and not later than thirty (30) days from the date of this correspondence, reimburse [F&D] for its Losses suffered through July, 2021, in the amount of $109,298.63 for legal and consulting fees and costs for the investigation and response to [HPCC's] demands." F&D further demanded that within thirty (30)

days of its August 24, 2021, correspondence that the Indemnitors "provide [F&D] access to each and all of the Indemnitors' books, records, and accounts." A true and correct copy of F&D's August 24, 2021, letter is attached hereto as **Exhibit "D"** and fully incorporated herein by reference.

34.     The Indemnitors ignored or rejected F&D's demand for reimbursement or for access to their books, records, and accounts.

35.     On January 11, 2022, F&D supplemented its demands on the Indemnitors: "[F&D] hereby renews and restates its demand that the Indemnitors immediately, and not later than 5:00 p.m. ET on January 25, 2021, reimburse [F&D] for its Losses suffered as a result of its having issued the Bonds in favor of [GEC]. [F&D]'s Losses total $124,000.99 for legal and consulting fees and costs for the investigation of, response to, and settlement of Hensel Phelps' demands." A true and correct copy of F&D's January 11, 2022, letter is attached hereto as **Exhibit "E"** and fully incorporated herein by reference.

36.     F&D also restated its demand for access to the Indemnitors' books, records, and accounts.

37.     Again, the Indemnitors ignored or rejected F&D's demands.

### *DAMAGES TO F&D*

38.     As a result of HPCC's Claims arising from the Bonds, F&D has suffered actual and substantial Losses which continue to accrue including by the

Indemnitors causing F&D to have to commence this action to enforce the GIA.

39.    GEC and the other Indemnitors have breached the GIA by failing or refusing to honor their obligations under the GIA to exonerate, indemnify, and hold harmless F&D from all accrued and accruing Losses.

40.    The Indemnitors' failures to honor and fulfill their obligations under the GIA constitute defaults under or breaches of the GIA.

41.    To bring this action to enforce the Indemnitors' obligations under the GIA, F&D has retained the undersigned attorneys to represent it, and it is obligated to pay these attorneys a reasonable fee for their services rendered and for costs and expenses incurred.

42.    Pursuant to the GIA and applicable law, GEC, and the other Indemnitors, are responsible for paying, among other things, F&D's legal fees, plus court costs, and interest.

43.    All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## <u>COUNT I</u>
## <u>BREACH OF CONTRACT AGAINST THE INDEMNITORS</u>

44.    F&D realleges and incorporates the allegations in Paragraphs 1 through 43 as if fully set forth herein.

45.    The Indemnitors have breached the GIA and are in default under the GIA by, among other things:

a.   Failing to exonerate, indemnify, and hold harmless F&D from and against all Losses including, without limitation, attorneys' fees and costs arising from, without limitation, F&D's having issued the Bonds;

b.   Failing to reimburse F&D upon demand for Losses; and

c.   Failing to give F&D access to the Indemnitors' books, records, and accounts.

46.   As a result of the Indemnitors' breach of the GIA, F&D has been damaged and suffered Losses, costs, damages, attorneys' fees, disbursements, expenses, and investigative costs arising from F&D's issuance of the Bonds, and in connection with the GIA.

47.   Indemnitors have ignored their contractual obligations and have failed and/or refused to honor their obligations as described above.

48.   Pursuant to the express terms of the GIA and applicable law, F&D is entitled to an award of its Losses, costs, expenses, interest, and attorneys' fees incurred in connection with the Bonds and the GIA, and for bringing and pursuing this action to enforce the GIA.

**WHEREFORE**, F&D demands judgment in its favor and against the Indemnitors, jointly and severally, for all of F&D's damages including, without limitation, its accrued and accruing Losses, investigative costs, consultants' fees, disbursements, expenses, attorneys' fees, and costs arising from F&D's issuance of

the Bonds and in connection with the GIA; pre- and post-judgment interest; and all other and further relief that the Court deems just and proper.

**COUNT II**
**SPECIFIC PERFORMANCE AGAINST THE INDEMNITORS**

49.    F&D realleges and incorporates the allegations in Paragraphs 1 through 43 as if fully set forth herein.

50.    F&D has demanded that the Indemnitors exonerate, indemnify, and hold harmless F&D from all losses and expenses that it has incurred by reason of having issued the Bonds.

51.    The GIA requires the Indemnitors to exonerate, indemnify, and hold harmless F&D from and against any and all losses and expenses, including but not limited to, interest, court costs, and attorneys' fees, incurred by reason of having executed or having procured the execution of the Bonds, by reason of the Indemnitors' failure to perform or comply with the GIA, and in enforcing any covenants or conditions of the GIA.

52.    The GIA further requires the Indemnitors to provide F&D free access to "any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by [F&D]" ("Books and Records"). F&D has made such a demand on the Indemnitors and renews its demand here.

13

53.    F&D has suffered and continues to suffer various kinds and natures of liability, Loss, and expense by virtue of and as a direct consequence of the Bonds and the Indemnitors' breach of the GIA.

54.    Despite F&D's demand that the Indemnitors fulfill their obligations under the GIA and F&D's attempt to secure compliance or performance by the Indemnitors, the Indemnitors have refused to perform their specific obligations under the GIA.

55.    F&D is entitled to an order compelling the Indemnitors, collectively and individually, jointly and severally, to specifically perform pursuant to the terms of the GIA by (i) indemnifying, exonerating, reimbursing, and holding harmless F&D for all Losses and expenses, plus attorneys' fees and other costs, that it has incurred, is incurring, and will continue to incur in connection with the Bonds and the GIA, and (ii) granting F&D free access to the Indemnitors' Books and Records.

56.    F&D has no adequate remedy at law to enforce its express, bargained for rights to access the Indemnitors' Books and Records, and be protected and held harmless against all demands, claims, liabilities, Losses and expenses of whatsoever kind or nature, including but not limited to interest, court costs, and legal fees.

57.    The balance of equities favors the rights of F&D under the GIA and F&D's entitlement to enforce such rights and to require the Indemnitors to specifically perform their clear obligations thereunder.

58.    The GIA is just, reasonable, and supported by adequate consideration.

59.    The terms of the GIA are sufficiently definite to allow enforcement by this Court.

60.    The performance that F&D seeks is substantially identical to that promised in the GIA.

61.    Enforcement of F&D's rights under the GIA is in the public interest and there is no reason why the Court should not specifically enforce F&D's rights against the Indemnitors.

62.    Accordingly, F&D is entitled to a decree of specific performance from this Court, compelling the Indemnitors to perform their specific obligations under the GIA, including their obligations to exonerate, indemnify, reimburse, and hold harmless F&D and to provide F&D with free access to their Books and Records.

**WHEREFORE**, F&D requests that this Honorable Court enter a judgment in favor of F&D and against each and all of the Indemnitors, jointly and severally, (i) compelling the Indemnitors to:

a.    Exonerate, indemnify, reimburse, and hold harmless F&D for all damages including, without limitation, its accrued and accruing Losses, investigative costs, consultants' fees, disbursements, expenses, attorneys' fees, and costs arising from F&D's issuance of the Bonds and in connection with the GIA;

b.    Keep and not sell, transfer, encumber, divert, disburse, or dispose of any assets and personal or real property unless and until F&D is fully reimbursed in accordance with the GIA;

c.     Render to F&D a full and complete accounting of all assets owned by them or in which they have an interest and to provide F&D access to all of their Books and Records; and

d.     Honor all other agreements and obligations contained in the GIA, including payment of F&D's attorneys' fees, expenses, and costs incurred in pursuing this action;

(ii) granting F&D a lien upon all assets and property, including real, personal, and mixed property, in which the Indemnitors have any interest in order to secure F&D against all accrued and accruing Losses that it may sustain or incur by virtue of it having executed the Bonds, with such liens to remain in effect unless and until the Indemnitors have fully paid and reimbursed F&D; and (iii) awarding F&D such other and further relief as this Court deems just and proper.

## COUNT III
## COMMON LAW INDEMNITY AGAINST GEC

63.    F&D realleges and incorporates the allegations in Paragraphs 1 through 43 as if fully set forth herein.

64.    F&D has suffered losses, costs, damages, attorneys' fees, disbursements, expenses, and investigative costs by reason of having executed or having procured the execution of the Bonds.

65.    F&D's Losses arising from the Bonds are result solely and directly from the special relationship between GEC and F&D arising from GEC's having requested that F&D issue the Bonds on which GEC is primarily obligated. F&D's

16

obligations are merely secondary, technical, derivative, imputed, and/or vicarious to that of GEC, and thus F&D is entitled to indemnification by law.

66.    GEC has a duty to indemnify F&D from all losses, costs, expenses, and claims arising from or related to the Bonds.

67.    F&D is without fault for the Claims made by HPCC against the Bonds and F&D, and the Losses suffered by F&D.

68.    F&D has incurred and continues to incur damages, losses, and expenses by reason of having executed the Bonds, which include but are not limited to, all sums that F&D has paid and is due to be reimbursed arising from having furnished the Bonds, including attorneys' fees, investigative costs, consulting fees, interest, and other costs and expenses that F&D has incurred or will incur as a result of issuing the Bonds.

**WHEREFORE**, F&D demands judgment against GEC for all compensable damages including, without limitation, Losses, costs, and expenses related to the Bonds; all fees, costs, and expenses of F&D for bringing and pursuing this action; pre- and post-judgment interest; attorneys' fees; expenses; and such other and further relief as this Court deems just and proper.

Dated: February 3, 2022.

17

**GURLEY & ASSOCIATES**

/s/     *David E. Gurley*

David E. Gurley, Esq.
Fla. Bar No: 0402214
dgurley@gurleyassociates.com
Michael A. Fant, Esq.
Fla. Bar No: 0100713
mfant@gurleyassociates.com
601 South Osprey Avenue
Sarasota, FL  34236
Telephone: (941) 365-4501
Facsimile: (941) 365-2916
eservice@gurleyassociates.com

*Attorneys for Plaintiff, Fidelity and Deposit*
*Company of Maryland*